**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-4965**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL AUGUSTUS COMSTOCK,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (2:07-cr-00025-F-1)

Argued:  October 29, 2010          Decided:  February 25, 2011

Before NIEMEYER, DAVIS, and WYNN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Wynn wrote the opinion, in which Judge Niemeyer and Judge Davis joined.

**ARGUED:** Milton Gordon Widenhouse, Jr., RUDOLF, WIDENHOUSE & FIALKO, Chapel Hill, North Carolina; Keith Alan Williams, KEITH A. WILLIAMS, PA, Greenville, North Carolina, for Appellant. Kristine L. Fritz, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:** George E. B. Holding, United States Attorney, Anne M. Hayes, Jennifer P. May-Parker, Assistant United States Attorneys, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

WYNN, Circuit Judge:

Defendant Michael Augustus Comstock was convicted by a jury of possessing a firearm after having been convicted of a crime punishable by imprisonment for more than a year in violation of 18 U.S.C. §§ 922(g)(1) & 924. On appeal, he argues that the district court erred by denying his motion to suppress certain evidence seized from his home; admitting evidence that he had guns and hunted on prior occasions; improperly calculating the guidelines range at sentencing; and imposing a procedurally unreasonable sentence. We disagree and affirm Defendant's conviction and sentence.

I.

In 2007, the North Carolina Wildlife Resources Commission was investigating Defendant for illegally hunting bears. On May 1, 2007, officers conducting surveillance apprehended Defendant as he exited a truck. Defendant told the officers that there was a gun in the truck, but that he did not know what kind of gun it was or whether it was loaded. Defendant stated that the truck was not his, and that if his fingerprints were on the gun, it was because he may have touched the gun when reaching into the backseat to retrieve something else. In a later-recorded interview, Defendant told the officers that he thought the gun was a pellet gun. At trial, several witnesses testified that

2

earlier in the day on May 1, 2007, Defendant fired the gun, apparently killing a bear.

On June 26, 2007, an informant advised officers that Defendant had removed all his guns from his residence on May 1, 2007 and given them to his nephew. Relying in part on this information, officers obtained a search warrant on July 17, 2007, alleging probable cause to believe that evidence of gun possession would be found in Defendant's home. The warrant specifically included "[f]irearms and other items that are pertaining to the possession of firearms[.]" Officers searched Defendant's house on July 18, 2007 and found one gun, as well as ammunition, documents, and videos.

Defendant moved to suppress the evidence obtained during the execution of the warrant. A magistrate judge conducted a hearing and recommended that Defendant's motion be denied. The district court adopted the magistrate judge's recommendation and denied Defendant's motion to suppress.

Before trial, the government filed a notice of its intent to offer Rule 404(b) evidence relating to Defendant's gun use and possession before and after May 1, 2007, the date of the alleged offense. Defendant filed a motion in limine to exclude that evidence. The district court denied the motion and overruled Defendant's objections to the evidence when it was offered at trial. The Rule 404(b) evidence included a twenty-

second clip of a video seized from Defendant's house.  The video depicted Defendant carrying a gun into the woods, followed by a man and a young boy.  The district court also admitted testimony from several witnesses who stated that Defendant had previously used firearms to hunt game.

Defendant was convicted, and the district court sentenced him to a 78-month term of imprisonment and a 3-year term of supervised release.

## II.

Defendant first argues that the district court erred in denying his motion to suppress the fruits of a search warrant that was based on stale and untimely information.  The government contends that Defendant failed to preserve this argument by failing to object to the issue in the magistrate judge's report.

"[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).

Defendant here argues that he preserved his staleness claim with the following objection:

4

The affidavit does not contain any information which would leave [sic] an independent judicial official to conclude that the confidential informant was reliable and accurate as alleged. Particularly, the affidavit does not disclose to the Magistrate Judge that he was one of the participants. Rather, the informant simply states that the defendant had guns in his house, but does not describe the basis of this knowledge. Further, the informant does not disclose that defendant has any other related accessories to the guns in his house or the basis for any such knowledge. In fact, the only thing the confidential informant relates is that on May 1st, some 2½ months earlier, any guns were taken out of the home.

Defendant contends that the above language "alerted the district court that [he] was objecting to the timeliness of the information used to establish probable cause and thereby provided ample basis for the district court to rule on the staleness issue." Reply Brief of Appellant at 4. However, Defendant concedes that his objection does not contain any reference to staleness.

Indeed, the only reference to timing appears in an objection directed at the reliability of the informant. If Defendant intended to object to the untimeliness of the information, it was not stated with sufficient specificity to preserve the issue. See Midgette, 478 F.3d at 622. Accordingly, we review Defendant's claim for plain error only. See United States v. Benton, 523 F.3d 424, 429 (4th Cir. 2008) (reviewing claim waived under Midgette for plain error).

5

Upon reviewing for plain error, we now consider Defendant's arguments: (1) that the delay between the date of the alleged offense (May 1) and the date the warrant was executed (July 18) rendered the information stale absent indicia that probable cause had not lapsed; and (2) that the warrant was not supported by probable cause because it revealed the absence of evidence at his home.

Probable cause means "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "The fourth amendment bars search warrants issued on less than probable cause, and there is no question that time is a crucial element of probable cause." United States v. McCall, 740 F.2d 1331, 1335 (4th Cir. 1984). Accordingly, "[a] valid search warrant may issue only upon allegations of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.'" Id. at 1335-36 (quoting Sgro v. United States, 287 U.S. 206, 210-11 (1932)).

In McCall, we rejected a test of counting the number of days to determine the vitality of probable cause. Id. at 1336. "Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the

6

length of the activity, and the nature of the property to be seized." Id. We also stated that when "the criminal activity alleged in the warrant is not ongoing in nature, nor the evidence sought intrinsically likely to remain at the location where it was originally observed, indicia external to the evidence itself should demonstrate that probable cause has not lapsed." Id. at 1337.

In this case, Defendant observes that he allegedly shot a bear on May 1, 2007. On July 17, more than eleven weeks after the date of the alleged offense, officers obtained a warrant to search his residence. Defendant asserts that officers had no indication that evidence of a crime would still be found at the residence on July 17. Defendant argues that applying the McCall factors yields the conclusion that the government's information was stale by then. We disagree.

In the affidavit attached to the warrant, an officer averred that individuals who purchase firearms retain certain documents relating to those purchases. Indeed, many items referred to in the search warrant, including sales receipts, factory warranties, and cancelled checks are items that one would expect a person to retain at home. See United States v. Farmer, 370 F.3d 435, 439-40 (4th Cir. 2004) (noting that documents like records of payment, canceled checks, and payment receipts are the types of records that are not ordinarily

7

destroyed or moved from place to place). Thus, we are persuaded to hold that it was reasonable for the magistrate to believe that such evidence of gun possession would be found at Defendant's residence, notwithstanding the passage of time. Cf. United States v. Neal, 528 F.3d 1069, 1074 (8th Cir. 2008) ("Information that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms tend to keep them for long periods of time.").

Defendant also argues that the warrant was so facially deficient that the officers could not reasonably presume that it was valid. Defendant notes that the affidavit submitted to obtain the warrant was based on an informant's tip that Defendant gave all his guns to a third party on May 1. Defendant argues that a person who divested himself of all his firearms probably divested himself of all his firearm-related items as well. Defendant contends that the informant's tip therefore could not furnish probable cause to look for even gun-related materials. We disagree.

Defendant's argument is premised on the unsupported assumption that one does not dispose of guns without also discarding all related items. But, as the magistrate judge observed, "[t]he confidential informant did not suggest that [Defendant] had removed from his home any firearm-related

8

evidence that he might have had." Insofar as the warrant specifically listed other evidence of gun possession, including ammunition, spare parts, and various records, Defendant fails to demonstrate that the affidavit was lacking in probable cause. See United States v. Crews, 502 F.3d 1130, 1140 (9th Cir. 2007) ("[I]t is reasonable to believe that ammunition, cleaning kits, cases, and other evidence of firearm possession would have still been present at Apartment 3 after only twelve days even if the .22 revolver was discarded.").

In sum, the district court did not commit plain error in adopting the magistrate judge's recommendation to deny Defendant's motion to suppress.

III.

Defendant next argues that the district court erred in admitting evidence that Defendant had guns and hunted on prior occasions.

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). It may, however, be admissible for other purposes, such as proof of intent, knowledge, or absence of mistake. Id. To be admissible under Rules 404 and 403, evidence of prior bad acts must be (1) relevant to an issue other than character; (2) necessary "in the

9

sense that it is probative of an essential claim or an element of the offense;" (3) reliable; and (4) more probative than prejudicial. United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997). We review a challenge to the admissibility of evidence under Rule 404(b) for abuse of discretion. Id. at 995.

Defendant first argues that the Rule 404(b) evidence was not relevant to any issue other than character or necessary to the government's case. Defendant's intent, however, was at issue here. Defendant was charged with possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and "a felon's possession of a firearm must be both voluntary and intentional to be punishable under § 922(g)(1)[.]" United States v. Scott, 424 F.3d 431, 435 (4th Cir. 2005). Defendant contended that his possession of the gun found in the truck he was driving on May 1, 2007 was neither voluntary nor intentional. We conclude, therefore, that the Rule 404(b) evidence introduced in this case was relevant to an issue other than character and necessary to the government's proof of intent. See United States v. Teague, 737 F.2d 378, 381 (4th Cir. 1984) (Rule 404(b) evidence was admissible when defendant denied knowledge of gun found in vehicle); but see United States v. Tate, 715 F.2d 864, 866 (4th Cir. 1983) (Rule 404(b) evidence not admissible when defendant denied knowledge of gun found in vehicle).

This conclusion is supported by numerous circuit courts that have considered the issue and held that past possession of a firearm is relevant to proving intent. See United States v. Moran, 503 F.3d 1135, 1144 (10th Cir. 2007) ("[T]he fact that [defendant] *knowingly* possessed a firearm in the past supports the inference that he had the same knowledge in the context of the charged offense."); United States v. Walker, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent . . . ."); United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003) ("[T]he caselaw in this and other circuits establishes clearly the logical connection between a convicted felon's knowing possession of a firearm at one time and his knowledge that a firearm is present at a subsequent time (or, put differently, that his possession at the subsequent time is not mistaken or accidental)."); United States v. Cassell, 292 F.3d 788, 794-95 (D.C. Cir. 2002) ("A prior history of intentionally possessing guns . . . is certainly relevant to the determination of whether a person in proximity to such a chattel on the occasion under litigation knew what he was possessing and intended to do so.").

Defendant next argues that the Rule 404(b) evidence was not reliable because the government's witnesses were not credible. "Evidence is reliable for purposes of Rule 404(b) unless it is

11

so preposterous that it could not be believed by a rational and properly instructed juror." United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008) (quotation marks and citation omitted). Defendant does not contest the reliability of the video, which showed him holding a firearm on a previous occasion. Rather, he attacks the government's witnesses as either inconsistent in their stories or biased due to a "falling out" with Defendant. Defendant recognizes, however, that credibility determinations rest with the jury. Further, Defendant fails to show that the evidence was so preposterous that it could not be believed by a rational juror. Defendant's argument regarding the reliability of the Rule 404(b) evidence is without merit.

Defendant also argues that the Rule 404(b) evidence should have been excluded because its tendency for unfair prejudice outweighed any probative value. Defendant contends that the evidence enticed the jury to convict him because of his tendency to hunt with guns.

"'Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" Id. at 319 (quoting United States v. Williams, 445 F.3d 724, 730 (4th Cir. 2006)).

12

Here, the challenged evidence involved conduct substantially similar to the charged offense, lessening the danger that the jury would be provoked to behave irrationally. See id. Because the evidence was properly admitted to show Defendant's intent, we do not discern any error in the trial court's finding that its probative value outweighed its prejudicial effect. See United States v. Aramony, 88 F.3d 1369, 1378 (4th Cir. 1996) (where evidence is probative, "the balance under Rule 403 should be struck in favor of admissibility, and evidence should be excluded only sparingly.").

In sum, we hold that the trial court did not abuse its discretion in admitting the Rule 404(b) evidence.

IV.

Defendant next argues that the district court improperly calculated his advisory Guidelines range at sentencing. Specifically, Defendant contends that the district court used an overbroad definition of "relevant conduct," which mistakenly allowed a prior conviction to be counted. In reviewing any sentence, we apply a deferential abuse of discretion standard. United States v. Carter, 564 F.3d 325, 328 (4th Cir. 2009).

Defendant's argument revolves around United States Sentencing Guidelines Manual ("U.S.S.G.") § 4A1.2. That section states:

13

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

U.S.S.G. § 4A1.2(e)(1) (2009). Commentary notes that "the term 'commencement of the instant offense' includes any relevant conduct." U.S.S.G. § 4A1.2, cmt. n.8.

Defendant was convicted in January 1986 for assault with a deadly weapon with intent to kill inflicting serious injury. He was paroled on May 27, 1988. Regarding the present case, Defendant concedes that he engaged in relevant conduct as far back as 2001. "The 'Bear Hunting 2001' video," he states, "established a 2001 beginning date for relevant conduct[.]" Brief of Appellant at 33. Defendant argues, however, that the district court erred in assigning criminal history points to his assault offense because the starting point of his relevant conduct in 2001 could have been more than fifteen years after his state court felony <u>conviction</u> in 1986.

Defendant's argument fails due to the second sentence of U.S.S.G. § 4A1.2(e)(1). The Guideline there instructs the sentencing court to "count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant <u>being incarcerated</u> during any part of

14

such fifteen-year period." U.S.S.G. § 4A1.2(e)(1) (emphasis added). Counting back fifteen years from 2001, the district court could consider any conviction that resulted in Defendant's incarceration since 1986, including his incarceration until 1988 for his 1986 conviction. The district court therefore properly counted Defendant's 1986 conviction in calculating Defendant's advisory sentencing range.

V.

Finally, Defendant argues that the district court erred by failing to explain its reasons for imposing his particular sentence, as required by 18 U.S.C. § 3553. The government contends that Defendant's failure to make this argument below requires us to apply plain error review.

"The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence[.]" 18 U.S.C. § 3553(c). "When rendering a sentence, the district court must make an *individualized* assessment based on the facts presented. That is, the sentencing court must apply the relevant § 3553(a) factors to the specific circumstances of the case before it." Carter, 564 F.3d at 328 (quotation marks and citation omitted). We recently held that plain error review applies to a claim of procedural sentencing error raised for the first time on appeal. United States v.

15

<u>Lynn</u>, 592 F.3d 572, 577 (4th Cir. 2010). A party preserves his claim below "[b]y drawing arguments from § 3553 for a sentence different than the one ultimately imposed . . . ." <u>Id.</u> at 578.

Defendant contends he preserved his claim here because he argued various aspects of 18 U.S.C. § 3553(a) before the district court. Indeed, Defendant persuaded the district court to grant him supervised release so that he could have surgery, and to deny the government's motion for an upward departure. There is no indication, however, that Defendant argued for "a sentence different than the one ultimately imposed[.]" <u>Id.</u> On the contrary, the district court granted Defendant every request Defendant made with regard to his sentence. Defendant therefore failed to preserve his objection to the district court's lack of explanation for his sentence, and we review for plain error.

To establish plain error, Defendant must demonstrate that the lack of explanation in this case constituted plain error affecting his substantial rights. <u>Id.</u> at 580. "In other words, even if we assume that the district court's very brief explanation constituted clear error, Rule 52(b) requires that [Defendant] also show that this explanation had a prejudicial effect on the sentence imposed." <u>Id.</u> Defendant does not allege any prejudice resulting from the district court's failure to provide an explanation for his sentence. Defendant's argument that the district court's failure to state its consideration of

16

the section 3553 factors justifies reversal of his sentence is therefore without merit. Cf. United States v. Hernandez, 603 F.3d 267, 272-73 (4th Cir. 2010) (holding no plain error in brief explanation of sentence when district court imposed the within-Guidelines sentence requested by the defendant).

AFFIRMED